# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

Case No.: 1:18-cv-20022-JEM

JUAN CARLOS GIL,

      Plaintiff,

v.

LIFE TIME FITNESS, INC. d/b/a Miami
Marathon and Half Marathon and
www.themiamimarathon.com,

      Defendant.

_____/

## MOTION TO DISMISS [DE 1] COMPLAINT

COMES NOW, Defendant, LIFE TIME, INC. ("Life Time" or "Defendant"),[1] by and through undersigned counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), files this Motion to Dismiss Plaintiff's Complaint and states as follows:

## INTRODUCTION

The instant action is just one of this professional Plaintiff's one hundred, twenty-nine (129) lawsuits filed in Florida District Courts since 2016 that allege virtually identical formulaic assertions under Title III of the American's with Disabilities Act of 1990, as amended, 42 U.S.C. §§1281-12189 ("ADA").[2] Like those that came before it, the Complaint [DE 1] is remit with numerous legal conclusions and facially invalid applications/interpretations of legal standards, as well as "factual" allegations that are simply unreasonable and implausible. Notwithstanding, even when assuming *in arguendo*, the veracity of well-plead factual allegations, the Complaint [DE 1]

---

[1] Life Time denies and rejects the propriety of the styled party description as it relates to the inclusion of "d/b/a Miami Marathon and Half Marathon and www.themiamimarathon.com." Life Time has not registered a fictitious name or under a "d/b/a" and does not conduct business as, or represent itself as the Miami Marathon and Half Marathon or wwww.themiamimarathon.com." Life Time reserves all rights, interests, and abilities to address these or any other improprieties. Moreover, by submitting this Motion, Life Time does not waive or consent to personal jurisdiction and reserves all rights, interests, defenses, and challenges related to same.

[2] *See*, Plaintiff's Filed Cases (2016 through Feb. 13, 2018) attached hereto as **Exhibit A**.

still fails, as a matter of law, to state a plausible claim for relief or cause of action under the ADA or for a common law claim of trespass upon chattel.

By way of limited example, and as discussed further below, Plaintiff fails to allege a cognizable "place of public accommodation," that he was denied full and equal enjoyment of a public accommodation, or that he experienced any barrier of access to a place of accommodation – let alone any discriminatory barrier of access. Moreover, Plaintiff has not – and cannot – allege any substantial nexus between the website, www.themiamimarathon.com (the "Website"), or that Life Time otherwise owned, leased, or operated "a place of public accommodation." Moreover, Count II attempts to create a non-existent trespass claim based solely on intangible, virtual, information. Indeed, courts in this District of dismissed identical claims, *sua sponte*, and otherwise declined exercising supplemental jurisdiction over same. For the foregoing reasons, the Complaint [DE 1] is comprehensively deficient as a matter of law and must be dismissed with prejudice.

## <u>ARGUMENT & MEMORANDUM OF LAW</u>

### I.     Relevant Legal Standards Governing a Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009) (quoting *Bell Atlantic Corp.*, *v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere *possibility of misconduct*, the complaint has alleged – but it has not 'show[n] – that the pleader is entitled to relief.'" *Id.* at 679 (quoting, Fed.R.Civ.P. 8(a)(2)) (emphasis added).

"Determining whether a complaint states a plausible claim for relief [is]…a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. To that end, the Supreme Court has implemented a two-pronged approach for applying the foregoing principles. *Id.* First, a reviewing court eliminates all allegations in the complaint that are merely legal conclusions. *Id.* Second, where there are well-pleaded factual allegations, if any, courts are to "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Boyd v. Warden, Holman Correctional Facility*, 856 F.3d 853, 864 (11th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 679).

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 4686 SUNBEAM ROAD - JACKSONVILLE, FLORIDA 32257 - (904) 672-4000 (904) 672-4050 FAX

Notably however, "[w]hile a court must accept well-pleaded factual allegations as true, 'conclusory allegations…are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations.'" *Turner v. Wells*, 198 F.Supp.3d 1355, 1363 (S.D. Fla. 2016) (quoting *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010)). Similarly, "unwarranted inferences, unreasonable conclusions, or arguments" – including factual allegations – are not sufficient and not entitled to an assumption of truth. *Lutman v. Harvard Collection Servs.*, 2015 U.S. Dist. LEXIS 103199 (M.D. Fla. Aug. 6, 2015) (citing *Twombly*, 550 U.S. at 555).

## II.    Count I Fails to State a Cause of Action Under Title III of the ADA

Count I of the Complaint [DE 1] attempts, albeit insufficiently, to state a cause of action for declaratory and injunctive relief under Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 (the "ADA"). [DE 1 at ¶8]. To state a claim under Title III, Plaintiff must assert sufficient plausible facts that: (1) he is disabled within the meaning of the ADA;[3] (2), that the defendant is a private entity that "owns, leases, or operates" a place of public accommodation; and, (3) that because of his disability the plaintiff was denied full and equal enjoyment of the public accommodation by the defendant. *Gomez v. La Carreta Enters.*, 2017 U.S. Dist. LEXIS 170777, *4 (S.D. Fla. Oct. 13, 2017) *dismissed with prejudice*, 2017 U.S. Dist. LEXIS 202662 (Dec. 6, 2017) (citing, *Gomez v. Bang & Olufsen America, Inc.*, 2017 U.S. Dist. LEXIS 15457 (S.D. Fla. Feb. 2, 2017) (citations omitted).

In regard to the second and third elements, the Complaint [DE 1] attempts to allege, albeit in a purely conclusory manner, two (2) "places of accommodation:" (i) the Miami Marathon and Half Marathon race event ("Marathon")[4] [DE 1 at ¶¶21-22]; and (ii) the Website. [DE 1 at ¶¶22, 73-74; 82-83]. However, apart from two (2) select references to Marathon and Plaintiff's incorrect assumption and conclusion that the Marathon is a public accommodation as a "place of exercise or recreation," [DE 1 at ¶¶21-22] the remainder and comprehensive substance of the Complaint [DE 1] is overtly committed to alleging that the Website itself is a public place of accommodation. [DE 1 at ¶¶23-60; 68-101]. As discussed further below, Plaintiff does not, and cannot allege that

---

[3] For the purposes of this Motion, Life Time will presume that Plaintiff has established the first element and is a legally blind individual that has also been diagnosed with cerebral palsy, rendering him unable to walk and requiring mobility devices, such as a wheelchair. *See*, [DE 1 at ¶14].

[4] *See*, [DE 1 at ¶¶21-22]. No facts are alleged in support of this contention. Instead, Plaintiff bases this assertion by way of a cursory conclusions: "[s]ince the [Marathon] race event is open to the public, the race is a place of public accommodation […]" and Life Time "is a private entity which owns and/or operates a '[a] place of exercise or recreation.'" *Id.* On their own, these legal restatements are substantively insufficient and do not satisfy the basic pleading obligation under Federal Rule 8(a) or the standards promulgated by *Twombly/Iqbal*.

Life Time owns or operates any physical location that constitutes a place of public accommodation as neither the Marathon (an event) – nor the Website are *physical* places of accommodation.

Moreover, to the extent Plaintiff alleges anything beyond the Website as a place of public accommodation in and of itself – which he does not – the Complaint [DE 1] unquestionably fails to establish any nexus between the Website and a physical location, or otherwise between any *virtual barrier* on the Website and a *tangible barrier* at a cognizable place of public accommodation. Indeed, the Complaint [DE 1] is unbashful in its overt attempt to create a cause of action based solely on Plaintiff's vague and conclusory dissatisfaction with his online browsing experience and otherwise fails to demonstrate that he was denied full and equal enjoyment of an actionable place of accommodation. For these reasons, and those provided below, Plaintiff has not stated a cause of action under Title III of the ADA and Count I must be dismissed. *Bang & Olufsen Am., Inc.*, 2017 U.S. Dist. LEXIS 15457; *La Carreta Enters.*, 2017 U.S. Dist. LEXIS 170777; *Access Now, Inc. v. SW. Airlines, Co.*, 227 F. Supp. 2d 1312 (S.D. Fla. 2002); *Kidwell v. Fla. Comm'n on Human Relations*, 2017 U.S. Dist. LEXIS 5828 (M.D. Fla. 2017).

**A.  There Is No Place of Public Accommodation**

The ADA prohibits discrimination by private entities in *places* of public accommodation, stating in relevant part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any public place of accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. §12182(a). 28 C.F.R. §36.104 defines a "place of public accommodation" as "a *facility*, operated by a private entity, whose operations affect commerce and fall within at least one" of twelve (12) specified categories set forth in 42 U.S.C. §12181(7) (emphasis added).[5] These categories are a "comprehensive" definition of "public accommodation" a *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1240 (11th Cir. 2000) (holding that Title III of the ADA only applied to the limited portions of a cruise ship that fit within one of the twelve (12) listed public accommodations). Indeed, twelve (12) "public accommodations" listed by the ADA are

---

[5] A "facility" is then defined as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real and personal property, including the site where the building, property, structure, or equipment is located." 28 C.F.R. §36.104.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING · 4686 SUNBEAM ROAD · JACKSONVILLE, FLORIDA 32257 · (904) 672-4000 (904) 672-4050 FAX

"exhaustive" and "not merely exemplary or illustrative." *Jankey v. Twentieth Century Fox Film Corp.*, 14 F.Supp.2d 1174, 1178 (C.D. Cal. 1998), *aff'd*, 212 F.3d 1159 (9th Cir. 200); *Torres v. AT&T Broadband, LLC*, 158 F.Supp.2d 1035, 1037 (N.D. Cal. 2001) (respectively). In accordance with basic principles of statutory construction, if a facility does not fall within either of the twelve (12) limited categories, it is not a "place of public accommodation." *Id.*

### i.   Life Time Does not "Own, Operate, Or Lease" The Marathon

In order to state a cause of action under Title III of the ADA, Plaintiff must establish the second *prima facie* element that Life Time "owns, leases, or operates a place of public accommodation." *La Carreta Enters.*, 2017 U.S. Dist. LEXIS 170777 at *4 (citations omitted). To this end, the Complaint [DE 1] purports, in an entirely conclusory manner, that Life Time "operates the Miami Marathon and Half Marathon race" and "controls, maintains, and/or operates […] a website called www.themiamimarathon.com." [DE 1 at ¶¶21, 23].

Without converting the instant Rule 12(b)(6) motion to one for summary judgment, City of Miami public records definitely show that the Marathon is an event registered to, permitted and operated by LTF Triathlon Series, LLC, a Delaware limited liability company. *See*, Special Events Permit and Submitted Application attached hereto as **Exhibit B**.[6] In raising this point Life Time is cognizant that Rule 12 motions are generally restrict to the four corners of the pleading. However, "[a] court properly takes judicial notice of relevant public records in deciding a motion to dismiss, and consideration of such documents does not convert a motion to dismiss into one for summary judgment." *Bouton v. Ocean Props.*, 201 F.Supp.3d 1341, *1345 (S.D. Fla. Aug. 15, 2016) (dismissing complaint under Rule 12(b)(6) where defendant argued that it did not own the subject property and attached public records in support of same) (citations omitted).

As detailed further below, a website is not "a place of public accommodation" under the ADA, *infra*.[7] Therefore, to satisfy the second *prima facie* element, *supra*, the Complaint [DE 1] must allege sufficient factual allegations demonstrating that Life Time owns a physical place of accommodation. *Id.* It follows naturally and logically, that if Life Time does not own, lease, or operate, a physical place of accommodation, Plaintiff cannot plausibly allege a sufficient nexus between the Website and such a public accommodation, let alone any facts related to accessing the

---

[6] *See also*, Fla. Dept. of Corporations Entity Name Detail and LTF Triathlon Series, LLC Annual Report (2018) attached hereto as **Exhibit C**.
[7] *See Haynes v. Interbond Corp. of Am.*, 2017 U.S. Dist. LEXIS 171644, *13-14 (S.D. Fla. Oct. 16, 2017)

Website and a tangible barrier at a physical location. *Haynes v. UPS*, 2018 U.S. Dist. LEXIS 18518, *9-10 (S.D. Fla. Feb. 2, 2018) (dismissing website accessibility complaint with threadbare assertions and legal conclusions, noting that "[i]n the absence of allegations that Plaintiff's inability to use ups.com impedes his access to one of the Defendant's physical stores, the Complaint must be dismissed). Due to the undisputable reality that Life Time does not own the Marathon, or any other physical place of accommodation that is discernable from the Complaint [DE 1], Plaintiff has not – and cannot satisfy – the second *prima facie* element, requiring dismissal with prejudice. *Haynes v. Host Int'l*, 2017 U.S. Dist. LEXIS 198086 (S.D. Fla. Nov. 30, 2017) (judgment for defendant where plaintiff failed to satisfy the second element).

### ii.   An "Event" Is Not a Place of Public Accommodation

Notwithstanding the above, assuming *in arguendo,* that Plaintiff's (false) conclusion that Life Time owns, leases, or operates the Marathon, Plaintiff still fails to satisfy the second *prima facie* element. The Marathon is an "event." It is not a physical location and otherwise does not – as a matter of law – fall within the ADA's "place of exercise or recreation" category or the statute's definition of a "facility." 42 U.S.C. §12181(7)(L); 28 C.F.R. §36.104.

Federal courts have routinely held that "events" like the Marathon, football games or youth hockey matches are not places of public accommodation under Title III of the ADA, especially when those events occur on public property and/or roadways. For example, in *Brown v. 1995 Tenet ParaAmerica Bicycle Challenge*, 959 F.Supp.496, 498 (N.D. Ill. March 12, 1997), the plaintiff alleged that he was denied a chance to participate in a bicycle race/tour organized by ParaAmerica. There, the court dismissed the complaint because the purported place of public accommodation – the ParaAmerica bike race/tour – was an event, and therefore did not meet the definition of a public accommodation. *Id*. at 498-99. On this point, the court specifically stated "[t]he tour itself took place on public roads which are not places of public accommodation because [the roads] are not operated, owned, or leased by a private entity" and the plaintiff did "not allege that he was denied access to a physical place." *Id*. at 499 (citation omitted).

Moreover, the court in *Brown* also held that "if the defendant is not sufficiently analogous to one of the listed public accommodations, then the defendant is not deemed to be a public accommodation." *Id.* at 498; *accord, Elitt v. U.S.A. Hockey*, 922 F. Supp. 217, 223 (E.D. Mo. 1996); *Treanor v. Washington Post Co*., 826 F. Supp. 568, 569 (D.D.C. 1993); *Stoutenborough v. National Football League*, 59 F.3d 580, 583 (6th Cir. 1995); and *Treanor v. Washington Post Co*.,

826 F. Supp. 568, 569 (D.D.C. 1993)). There, the plaintiff argued that because the defendants owned, operated, or leased offices where the event was planned and otherwise executed, the entities themselves satisfied the requirements of a being a "public accommodation." *Id*. This contention was rejected outright. *Id*. at 498-99. The court in *Brown* went even further, considering the argument that the defendants had physical locations, their offices. *Id*. The court rejected this contention, opining that even if it presumed the event was organized/executed out of such spaces/locations, those physical locations were still "not a sufficient link to support application of the ADA." *Id*. at 499 (citing, *Stoutenborough*, 59 F.3d at 583. Moreover, the court reasoned the claim was similar to those against youth hockey leagues, professional football league games – all of which were determined not to be public accommodations under the ADA. *Id.* at 489 (citing, *Stoutenborough*, 59 F.3d at 583; *Elitt*, 922 F. Supp. at 223).

Similarly, in *Louie v. NFL*, 185 F.Supp.2d 1306 (S.D.Fla. Feb 1, 2002), this District held on a motion to dismiss that NFL's Super Bowl ticket disbursement mechanisms did not qualify as a public accommodation under the ADA. The Court noted "the plain meaning of Title III is that a public accommodation is a place, thus, 'it offers all of the services which the lessor of the public accommodation offers, not all services which the lessor of the public accommodation offers, which fall within the scope of Title III." *Id.* at 1308 (citing *Stoutenborough*, 59 F.3d 580). In *Louie,* Judge Zloch acknowledged the actual stadium at issue constituted a place of public accommodation, but dismissed the complaint because the defendant, the National Football League, did not own or operate the stadium - it just organized the Super Bowl, which was to take place at the stadium. *Id* ("the stadium in which the Super Bowl is played is considered a place of public accommodation").

Akin to the dismissed complaints in *Louie* and *Brown*, Plaintiff merely alleges that Marathon is a place of public accommodation despite the reality that the Marathon is an event, and not a physical location (like a stadium or arena). Moreover, to the extent there even could be a "physical location" based on where the Marathon occurred, that location is a public roadway, and not a facility that is capable of being owned, operated, or leased, by Life Time or any other private entity, *supra*. Consequently, the Complaint [DE 1] fails to plead the requisite *physical* place of accommodation necessary to state a cause of action under Title III of the ADA. Consequently, the Complaint [DE 1] must be dismissed. *See, Louie*, 185 F.Supp.2d 1306.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 4686 SUNBEAM ROAD - JACKSONVILLE, FLORIDA 32257 - (904) 672-4000 (904) 672-4050 FAX

### iii.   A Website Is Not A Place of Public Accommodation

It is well established that in the Eleventh Circuit, a website, in and of itself, is a public place of accommodation under the ADA. *Bang & Olufsen America, Inc.*, 2017 U.S. Dist. LEXIS 15457, *7-8 (S.D. Fla. 2, 2017); *Rendon v. Valleycrest Prods.*, 294 F.3d 1279, (11th Cir. June 18, 2002) *rehearing denied*, 54 Fed.Appx. 493 (2002). "Though *Rendon* concluded that Title III extends to non-physical spaces, it does not establish that a virtual space like a website is necessarily covered." *La Carreta Enters.*, 2017 U.S. Dist. LEXIS 202662 at *8. Despite this clear precedent, Count I overtly attempts to allege that the Website is, in and of itself, a place of accommodation. *See e.g.*, [DE 1 at ¶¶29; 77-90]. Indeed, Plaintiff raises numerous allegations that expressly aim to establish a website as a place of public accommodation regardless of its applicability to a physical location and create a claim based solely on virtual barriers stemming from a purported absence of a full-service website built specifically for disabled persons. [DE 1 at ¶¶83-98].[8]

However, contrary to Plaintiff's ambitious, yet invalid, assertions, the law on these issues is clear – a website is not a public accommodation and *virtual barriers* do not permit a claim under Title III without sufficient factual allegations that establish a nexus between a website's *virtual barriers* and a *tangible barrier* to a physical, concrete place of public accommodation. *Rendon*, 294 F.3d at 1283-84 ("because Congress has provided such a comprehensive definition of 'public accommodation,' we think that the intent of Congress is clear enough"); *Access Now*, 227 F.Supp.2d 1312 (dismissing Title III claim for failing to establish a nexus between southwest.com and a physical, concrete place of public accommodation); *La Carreta Enters.*, 2017 U.S. Dist. LEXIS 170777, *4 (same); *Bang & Olufsen America, Inc.*, 2017 U.S. Dist. LEXIS 15457, at *2 (same). "Though *Rendon* concluded that Title III extends to non-physical spaces, it does not establish that a virtual space like a website is necessarily covered." *La Carreta Enters.*, 2017 U.S. Dist. LEXIS 202662 at *8. Rather, to survive a motion to dismiss, the Plaintiff must establish a substantial nexus between the website and the physical place of accommodation. *Id.* (citing, *Gil v. Winn-Dixie Stores, Inc.*, 242 F.Supp.3d at 1320); *see also*, *Bang & Olufsen Am., Inc.*, 2017 U.S. Dist. LEXIS 15457, *10. The Complaint [DE 1] was woefully short of this requirement.

---

[8] Life Time notes that ¶¶83-98 of the Complaint are remit with incorrect and mischaracterized legal conclusions and legal interpretations which are facially contradicted by the cited authorities themselves, or otherwise by governing Eleventh Circuit jurisprudence.

**III.**          **Plaintiff Has Not – And Cannot – Allege A Substantial Nexus**

In raising this Motion, Life Time remains cognizant that in the Eleventh Circuit a website, or some *virtual* or *intangible barrier*, can fall within a Title III claim, such as eligibility requirements and screening rules which actually restrict a disabled person's ability to participate or enjoy the goods, services and privileges of the actual *physical* public accommodation. *Rendon*, 294 F.3d at 1283 (internal citations omitted). However, to survive a motion to dismiss requires sufficient allegations to establish that a substantial nexus exists between such virtual/intangible and a physical/tangible barrier[9] to a physical place of accommodation. *Id.* (citing, *Gil v. Winn Dixie Stores,* 242 F.Supp.3d at 1320); *see also, Bang & Olufsen Am., Inc.*, 2017 U.S. Dist. LEXIS 15457, *10. When evaluating Count I of the Complaint [DE 1] alongside other cases involving intangible barriers and websites, it is clear that under no circumstance or interpretation does Plaintiff raise any, let alone sufficient, factual allegations that may demonstrate a nexus between the Website and a physical place of accommodation.

<u>Demonstrating a Nexus Between Virtual/Intangible Barriers and a Physical Place</u>

By way of example, in *Rendon*, the Eleventh Circuit considered allegations that the defendant discriminated against the plaintiffs on the basis of a disability in the denial of the opportunity to be a contestant on the television quiz show "Who Wants to be A Millionaire." *Rendon*, 294 F.3d at 1280-81. Notably the Eleventh Circuit opined that the defendant's automated telephone hotline – the only means to try and become a contestant – effectively "screened out" disabled individuals who were unable to utilize the hotline in the same manner/function as non-disabled persons. *Id.* The Eleventh Circuit deemed that the automated hotline was covered under the ADA because the plaintiffs *actually sought* the privilege of competing in the contest "held in a concrete space" and were screened out of because of their disabilities. *Id.* at 1284.

In *Winn Dixie Stores, Inc.*, this Plaintiff also alleged that the defendant's website did not integrate with his screen reader software. 242 F.Supp.3d at 1316. Notably however, the issues being considered were narrower than the instant case because: (i) the defendant admitted to having physical places of accommodation, i.e. its actual brick and mortar pharmacies; and, (ii) the complaint, unlike the Complaint [DE 1] in this case, sufficiently alleged that the services provided

---

[9] A *tangible barrier* under the ADA is "physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services, and privileges" *Rendon*, 294 F.3d at 1283 (internal citations omitted).

by the website provided the identical services offered at the defendant's physical locations. *Id.* at 1318-1321. For example, the plaintiff alleged the website was a public accommodation in that it allowed customers to fill or refill prescriptions for in-store pick up or for delivery – an identical service provided at one of the defendant's physical pharmacy locations. *Id.* Said differently, the Plaintiff alleged <u>facts</u> showing that the website was "directly connected" to and otherwise *heavily integrated* with the services, privileges and advantages of Winn-Dixie's physical stores and pharmacies. *Id.* at 1321. So while the defendant in *Winn-Dixie Stories* argued that its website was not as a "public accommodation under the ADA" the court, citing *Rendon*, agreed with this Plaintiff. *Id.* at 1321. Following a non-jury trial, Judge Scola noted:

> The services offered on Winn-Dixie's website, such as the online pharmacy management system, the ability to access digital coupons that link automatically to a customer's rewards card, and the ability to find store locations, are undoubtedly services, privileges, advantages, and accommodations offered by Winn-Dixie's physical store locations. These services, privileges, advantages, and accommodations are especially important for visually impaired individuals since it is difficult, if not impossible, for such individuals to use paper coupons found in newspapers or in the grocery stores, to locate the physical stores by other means, and to physically go to a pharmacy location in order to fill prescriptions.

*Id.* The instant Complaint [DE 1] is entirely distinguishable from the underlying facts presented in *Winn-Dixie* and, instead, align to those in *Louie*, *Brown*, and *Bang & Olufsen America, Inc.*[10]

Plaintiff does not assert any factual allegations regarding any identical goods or services between the Website and a physical location. [DE 1]. Assuming, *in arguendo*, that Plaintiff did make any such allegations to that effect, they would be of no consequence as the Marathon cannot constitute a physical place of accommodation like the brick and mortar pharmacies in *Winn-Dixie*. Asserting conclusory and facially implausible remarks in a template pleading does not entitle a litigant to survive a motion to dismiss. *Winn-Dixie* is the exception – not the standard.

### i.    The Allegations Fail To Demonstrate The Required Nexus Both Facially, And As A Matter of Law

As described in *Gil v. Winn-Dixie*, a nexus is shown where the factual allegations demonstrate that the website is "heavily integrated with, and in many ways operates as a gateway to," the defendant's physical location. 242 F.Supp.3d at 1321. Notably, there are only two (2) cases

---

[10] The foregoing examples are not exclusive.

in the Eleventh Circuit where the courts found that a sufficient nexus existed: *Rendon* and *Winn Dixie Stores*.[11] The instant Complaint [DE 1] does not meet, or fall within, the framework or standard of either case. Rather, Plaintiff's allegations are both facially and legally inapposite.

After sifting through an amalgam of conclusory remarks and irrelevant interpretations of legal and non-legal matters,[12] the allegations show that Plaintiff's contentions are solely with the Website itself. More specifically, Plaintiff takes issue with the purported absence of a specific "Accessibility Notice," and his "inability to enjoy and learn about Defendant's amenities, accommodations, goods and services…" [DE 1 at ¶36]. Importantly, Plaintiff's purported inability to enjoy his exploratory review of the Website is explicitly alleged as the *virtual barrier*. *Id*. And apart from threadbare restatements of Title III requirements, the purported ADA violations and relief sought are solely concerned with the Website and without any allegation (fact or conclusion) as to how non-binding and non-required web-design features relieve or cure any physical barrier to a place of accommodation.

Specifically, the Complaint [DE 1] does not allege any facts the Website creates or includes a barrier, screens out, prevents or prevented Plaintiff from entering a physical "public place of accommodation" or from utilizing a "public accommodation" available or offered at such a location or "facility." Although this is something he cannot do considering that neither the Marathon nor the Website constitute a place of public accommodation, *supra*, the allegations themselves do not allege facts any that could possibly give rise to an inference of what the *virtual barriers* actually were, let alone how they physically precluded Plaintiff from attending the January 28, 2018 marathon. *See generally*, [DE 1].  Moreover, Plaintiff does not allege that he even intended to attend or participate in the Marathon, but instead accessed the Website purely because he wanted to "educate himself" about the "race entertainment" and "goods and services available" with the intent on making plans to attend. [DE 1 at ¶31]. Then, without anything more, Plaintiff goes on to <u>conclude</u> that the Website "lacks accommodations necessary to allow visually impaired individuals who use screen reader software access to the Website, prompting information to locate and accurately fill-out online forms. [DE 1 at ¶33].

---

[11] Life Time acknowledges out of candor that *Gomez v. J. Lindeburg USA, LLC*, 2016 U.S. Dist. LEXIS 187771 (S.D. Fla. 2016) holds that a sufficient nexus was established. However, *J. Lindeburg* stems from a motion for default summary judgment and thus, the Court had no contravening argument beyond the plaintiff's allegations. Accordingly, it would be inappropriate to consider it in this action.

[12] *See e.g.*, [DE 1 at ¶¶2-3, 4, 19-20, 24-27, 31, 33, 37-47, 48-57, 72, 76-84, 86-90].

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 4686 SUNBEAM ROAD - JACKSONVILLE, FLORIDA 32257 - (904) 672-4000 (904) 672-4050 FAX

The remainder of Plaintiff's "information and belief" assertions are nothing more than formulaic recitation of virtually the same identical website deficiencies alleged in several of his other actions,[13] namely that Life Time has not: initiated an ADA policy or instituted an Effective Communications Committee; designated an Accessibility Coordinator; established an Auxiliary Aids and Services Accessibility User Testing Group; implemented an Automated Accessibility Testing Program; publicly disclosed audits or lawsuits regarding inaccessibility; incorporated the universal symbol for the disabled into the Website; created "Specialized Customer Assistance" line; met the Web Content Accessibility Guidelines ("WCAG") 2.0; and other baseless conclusions that simply have no relation or factual basis in the pleading or under the law.  [DE 1 at ¶¶34, 38-53]. Indeed, these allegations and Plaintiff's remaining unsubstantiated belief of other "barriers of access" on the Website are merely described as "programing errors" that are generally suggested to give screen reader users a better website browsing experience [DE 1 at ¶¶92-98].

To be clear, Plaintiff does not allege that he attempted, but could not, "fill out forms" (much less identify such forms), purchase online merchandise, or attempted and could not sign up for race events. Nor does the Complaint [DE 1] possess any facts that can support a connection between the purported *virtual barriers* and their likelihood of preventing or curing any attempt by Plaintiff, or some other person, from accessing a previously inaccessible portion of the Website, let alone a physical location assuming one even existed in this case. *See generally*, [DE 1].

Importantly, there are no laws or rules that require a website to include the items or features described in the Complaint [DE 1 ¶¶34, 38-53, ¶¶91-98] or that these features are necessary to comply with the ADA. To the contrary, "the ADA does not require places of public accommodations to create full-service websites for disabled persons. In fact, the ADA does not require a place of public accommodation to have a website at all. All the ADA requires is that, if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-mortar [*sic*] store." *Bang & Olufsen*, 2017 U.S. Dist. LEXIS 15456, *4. Like a growing number of recent decisions in this District, "Plaintiff's grievance seems to be that Defendant's website does not provide a blind person with the same [online] experience as non-disabled persons." *Id.*; *see also*, *La Carreta Enters.*, 2017 U.S. Dist. LEXIS 170777 at *9 (same); *Haynes v. Interbond Corp. of Am.*, 2017 U.S. Dist. LEXIS 171644, *14-15 (same).

---

[13] *See*, **Exhibit A**.

When faced with similar allegations directed towards an inability to use a website "to gain information about" a physical location and other generalized "goods and services" [DE 1 at ¶31] this District has consistently held that such assertions are insufficient to state a claim under the ADA as a matter of law, and otherwise fail to show a sufficient nexus between a website, or some other "intangible" barrier, and a place of public accommodation. *La Carreta Enters.*, 2017 U.S. Dist. LEXIS 202662 at *8-11; *see also*, *Bang & Olufsen Am., Inc*, 2017 U.S. Dist. LEXIS 15457 (collecting cases); *Access Now, Inc.*, 227 F. Supp. 2d at 1321 (dismissing complaint because the plaintiffs failed to establish a nexus between the defendant's website and a physical, concrete place of public accommodation); *Kidwell v. Fla. Comm'n on Human Rels.*,2017 U.S. Dist. LEXIS 5828, 2017 WL 176897, at *4 (M.D. Fla. Jan. 17, 2017) (holding that a website is not a public accommodation under the ADA, and dismissing the plaintiff's ADA claim in part because the plaintiff could not demonstrate that the website's inaccessibility prevented his access to a specific, physical, concrete space); *see also*, *Stern*, 2010 U.S. Dist. LEXIS 144042.

Ultimately, Plaintiff has not alleged sufficient facts to show the requisite nexus between the Website and a place of public accommodation, or even that some virtual barrier on the Website prevented him from accessing/attending the Marathon, or an actionably physical place of accommodation. Instead, based only on his own "information and belief," Plaintiff takes issue with the Website based by way of some over-generalized comparison to non-binding WCAG. By doing so, Plaintiff tries to create a cause of action for purportedly not, at a minimum, programming or implementing specialized accessibility features throughout an entire website where no such features are required by law. To incorrectly permit these allegations to form a plausible cause of action, the Court will in turn be re-writing the Complaint [DE 1] and significantly amending the ADA so as to require all websites to interface with screen readers in the way and manner Plaintiff and his attorney prefer. The Court should not take "that leap because it would eviscerate the framework established by district courts within the Eleventh Circuit construing *Rendon* and dismiss Count I with prejudice. *La Carreta Enters.*, 2017 U.S. Dist. LEXIS 202662 at *11; *see also*, *Bang & Olufsen Am., Inc*, 2017 U.S. Dist. LEXIS 15457.

**IV.    Count II Fails to State a Common Law Trespass Upon Chattel**

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 4686 SUNBEAM ROAD - JACKSONVILLE, FLORIDA 32257 - (904) 672-4000 (904) 672-4050 FAX

In Count II, Plaintiff attempts to create a non-existent state common-law claim for trespass on chattel.[14] [DE 1 at ¶¶61-66; 103-110]. Plaintiff alleges that when he intentionally accessed Life Time's website, Life Time somehow "trespassed" upon his device by "consuming its resources," "degrading its performance," "infringing on Plaintiff's *right* to exclude *others* from his computer" and other nonsensical means. [DE 1 at ¶109]. While this claim is legally deficient and subject to dismissal as a matter of law, *infra*, the Court should decline to exercise supplemental jurisdiction over this non-existent, albeit novel, state law claim.

Pursuant to 28 U.S.C. Section 1367(c), district courts are permitted to decline supplemental jurisdiction if: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or, (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. This District has <u>repeatedly declined to exercise supplemental jurisdiction and dismissed this exact claim in comparable ADA actions</u> – in fact, it has done so *sua sponte*. *See e.g.*, *Gil v. StubHub, Inc.*, 2017 U.S. Dist. LEXIS 153177 (S.D. Fla. Sept. 18, 2017); *Gil v. Ultimate Fitness Grp.*, *LLC*, 2017 U.S. Dist. LEXIS 142108 (S.D. Fla. Aug. 31, 2017); and, *Moncada v. Sports Warehouse, Inc.*, 2017 U.S. Dist. LEXIS 153093 (S.D. Fla. Sept. 19, 2017).

In each of these cases, the court found that this specific claim and theory of trespass falls squarely within the conditions of §1367(c), noting that "[f]ederal courts have not hesitated to dismiss or remand state causes of action under §1367(c)(2) where the state claims would require elements of proof that are distinct and foregoing to [the federal] claim, and which would therefore cause a substantial expansion of [the] action beyond that necessary and relevant to the federal claim." *Id.* (internal quotes and citations omitted). Just as in *Stubhub, Inc.*, *Ultimate Fitness Grp., LLC*, and *Sports Warehouse, Inc.*, Plaintiff's trespass claim "would involve elements of proof wholly distinct from Plaintiff's ADA claim" and "[a]ccepting supplemental jurisdiction over Plaintiff's state-law claim would delay resolution of Plaintiff's federal-law claim." *StubHub, Inc.*, 2017 U.S. Dist. LEXIS 153177 at *3.

---

[14] "The tort of trespass to personal property is the intentional use of, or interference with, a chattel which is in the possession of another, without justification." *Roberta L. Marcus v. New Cingular Wireless PCS, LLC*, 2013 U.S. Dist. LEXIS 193150, *13 (S.D. Fla. April 26, 2013) (internal quote and citation omitted).

Moreover, Count II asserts an entirely novel state-law claim. *StubHub, Inc.*, 2017 U.S. Dist. LEXIS 153177. "No Florida case available to this Court addresses whether the installation of cookies on an internet browser constitutes trespass either in general or when a website visitor is incapable of reading the website's privacy policy." *Id.* Nor any Florida court addressed whether a website's use of analytics software – which does not in and of itself mean, or require, the utilization of a browser "cookie – can constitute a trespass on chattel claim. Accordingly, this Court should decline to exercise supplemental jurisdiction and dismiss Count II. *Id.* at *3-4; *see also*, *Open Access for All, Inc. v. Home Serv. Club Warranty Corp.*, 2017 U.S. Dist. LEXIS 193495 (S.D. Fla. Nov. 20, 2017) (declining supplemental jurisdiction of virtually identical trespass claim in an ADA action); *Gil v. TCMZ, LLC*, 2017 U.S. Dist. LEXIS 172536 (S.D. Fla. Oct. 17, 2017) (same); *Gil v. Ace Hardware Corp.*, 2017 U.S. Dist. LEXIS 155331 (S.D. Fla. Sept. 21, 2017).

### A. To the Extent the Court Retains Supplemental Jurisdiction for the Purpose of This Motion To Dismiss, Count II Fails To State A Claim As A Matter of Law[15]

In Florida, "[t]respass to personal property is the intentional use of, or interference with, a chattel which is in the *possession* of another, without justification. *UMG Recordings, Inc. v. Del Cid*, 2007 U.S. Dist. LEXIS 103381, *4 (M.D. Fla. Sept. 19, 2007) (citing, *Coddington v. Staab*, 716 So.2d 850, 851 (Fla. 4th DCA 1998); Restatement (Second) Torts §218 ("one who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if, (a) he dispossesses the other of the chattel, or (b) the chattel is impaired as to its condition, quality, or value, or (c) the possessor is deprived of the use of the chattel for a substantial time, or (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest.")).

The Complaint [DE 1] fails to allege any facts that plausibly give rise to, or sufficiently assert any of these elements. Indeed, Plaintiff fails to allege that Life Time obtained *possession* of his computer let alone *entered* into his computer and *removed* some form of chattel or property from it. [DE 1 at ¶¶61-66; 103-110]. Even assuming, *in arguendo*, that Plaintiff did sufficiently raise such allegations, the claim nevertheless fails to allege that Plaintiff was deprived of his computer for a substantial period of time, or that any plausible harm was caused to his computer.

---

[15] Count II inherently addresses and relates to discoverable evidence immediately related to Plaintiff's alleged access of Life Time's website as he alleges to have "removed the programs." [DE 1 at ¶109(e)]. Consequently, Plaintiff has likely deleted potential discoverable and admissible evidence. As such, Life Time reserves the right to investigate and conduct discovery into what amounts to spoliation and preserves all available rights and abilities under the law.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 4686 SUNBEAM ROAD - JACKSONVILLE, FLORIDA 32257 - (904) 672-4000 (904) 672-4050 FAX

*Id.* Taking it one step further, even if Plaintiff did make such allegations – which he does not – the claim still fails as Florida trespass law only applies to physical/tangible property.

No state or federal court has ever found "cookies" or analytic software, or the use of cookies are "illegal" or actionable for a claim of trespass, and no Florida state or federal statute considers "cookies" illegal or actionable given their harmlessness and readily available means of blocking and deleting them.  For example, in *Vecchio v. Amazon.com, Inc.*, the Western District Court in Washington considered a similar trespass claim under a motion to dismiss.  2012 U.S. Dist. LEXIS 76536, *26-28 (W.D. Wash. June 1, 2012). There, the court noted that in common-law trespass to chattel claims "[t]he interest of a possessor of a chattel in its inviolability, unlike the similar interest of a possessor of land, is not given legal protection by an action for nominal damages for harmless intermeddlings with the chattel." *Id.* at *27 (quoting, Restatement (Second) of Torts §217). "Therefore, one who intentionally intermeddles with another's chattel is subject to liability only if his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interest of the possessor is affected…" *Id.* In this regard, the Complaint [DE 1] fails to allege sufficient facts that would permit the Court to infer that [Plaintiff] sustained any plausible harm to a materially valuable interest in the condition, quality, or value of [his] [computer]." *Id.*

Here, Plaintiff does not allege that Life Time "sends some 80,000 to 100,000 requests to plaintiff's computer systems per day" nor does he allege that the cookies or other purported "software" "bombard[ed] [his] computer[] with pop-up advertisements that obscure[d] the web page a user [wa]s viewing and 'destroy[ed] other software on [his] computer." *Amazon.com, Inc.*, 2012 U.S. Dist. LEXIS 76536, *27-28 (citations omitted). It follows that even if Plaintiff accessed the Website every day in October 2017, the corresponding allegations do not support even the slightest inference that Plaintiff "sustained any plausible harm to a materially valuable interest in the condition, quality, or value" of his mobile device given the *de minimis* nature, size, function, removability, and blocking of cookies. *id* at *27.

### a.  Digital Files And Any Non-Physical Property are Not "Chattels"

Moreover, Count II fails as a matter of law because, in Florida, digital computer file and similar intangible data cannot be the subject of claim for trespass to chattel. *See e.g.*, *Burshan v. Nat'l Union Fire Ins. Co.*, 805 So.2d 835, 845-46 (Fla. 4th DCA 2001). More specifically, Florida

tort law interprets personal chattel as "movable things" which may be carried about by the owner/possessor. *Id.* (citation omitted). For example, animals, household items, money, jewels, coins, garments, and everything else that can physically be put into motion and transferred from one place to another is a chattel. *Id.* (citation omitted). Demonstrating this "physical" or "tangible" requirement, the court in *Burshan*, affirmed the dismissal of the trespass count, stemming from the alleged trespass of a bank account, "because a bank account is not a chattel which can be the subject of a trespass." *Id.* at 846. Assuming, *in arguendo*, that Plaintiff's allegations are true, there can be no trespass claim as digital memory space, "processing cycles," internet activity, cookies or even analytics of Plaintiff's use of the *mobile* website, are not chattel. *Id.*; *see also*, *Inventory Locator Serv., LLC v. Partsbase, Inc.*, 2005 U.S. Dist. LEXIS 32680 *35-36 (W.D. Tex. Sept. 2, 2005) (applying Florida law, holding that Florida "does not recognize a cause of action for trespass in chattels in cyberspace."). Indeed, Plaintiff has fundamentally failed to explain how cookies or data analytics that were allegedly placed into his browser or extracted from his navigation of the website constitute chattels, as that term is defined under Florida law. *See*, *Dish Network L.L.L. v. Fraifer*, 2017 U.S. Dist. LEXIS 186165, *7-8 (M.D. Fla. July 21, 2017). Thus, Count II fails as a matter of law and must be dismissed. *Id.*

## V.    Plaintiff Lacks of Standing To Seek Injunctive Relief[16]

In addition to the grounds stated above, Count I warrants dismissal under Federal Rule 12(b)(1) due to Plaintiff's lack of standing at the time the Complaint [DE 1] was filed and the absence of any real or immediate threat of harm, *ex facie*.

When opining on ADA cases, courts in the Eleventh Circuit have routinely held that "a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. July 9, 2001). Said differently, Plaintiff must allege sufficient facts that plausible demonstrate that future discrimination is not speculative or hypothetical – the threat of harm must be real and immediate. *Id.* at 1081-82. In that regard, the Complaint [DE 1] falls woefully short of alleging facts to sufficient do demonstrate any real or immediate potential for future harm.

Plaintiff merely contends that he "is a customer who is interested in attending the Miami Marathon and Half Marathon on January 28, 2018 at the race location of 601 Biscayne Blvd.,

---

[16] The foregoing section proceeds under the *in arguendo* assumption that the Marathon can constitute a public place of accommodation, which as discussed above, it is not and cannot be a public accommodation under the ADA.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 4686 SUNBEAM ROAD - JACKSONVILLE, FLORIDA 32257 - (904) 672-4000 (904) 672-4050 FAX

Miami, Florida, 33141." [DE 1 at ¶30].[17] More specifically, Plaintiff alleges that he utilized the Website at some unknown date(s) in October 2017 to "educate himself" as to the Miami Marathon and Half Marathon "race entertainment" and non-descriptive "goods and services," with the "intent" of "making plans" to attend. [DE 1 at ¶31] (emphasis added). To be clear, Plaintiff does not allege that he was *prevented* or incapable of attending the Miami Marathon, let alone he *intended* or *attempted* to visit the Miami Marathon in January 2018 or anytime thereafter. Instead, the Complaint [DE 1] only contains factual allegations that Plaintiff had a *plan to possibly make plans* [DE 1 at ¶31] and that Plaintiff "*attempted* to locate an Accessibility Notice." [DE 1 at ¶34] (emphasis added). Consequently, Plaintiff's own allegations effectively support that any discrimination, past or future, is purely conjectural, hypothetical, speculative, contingent, and not most certainly not "real" or "immediate." *Shotz*, 256 F.3d at 1082. "The plaintiff either must have attempted to return to the non-complaint building or at least intend to do so in the future." *Id.*

Plaintiff also fails to allege that he has suffered any form of discrimination or injury-in-fact necessary to establish standing under the ADA, or that any past or future injury will be redressed by a favorable decision. Given the Eleventh Circuit precedent that even a claim based on some *virtual barrier* requires a nexus between the *virtual barrier* and a physical barrier at a physical place of accommodation[18] it follows that a purported virtual barrier must have prevented Plaintiff from accessing the Miami Marathon.[19] Under this hypothetical, Plaintiff would have encountered the *virtual barrier* in October 2017. [DE 1 at ¶31]. The Miami Marathon was not scheduled to occur until January 28, 2018. [DE 1 at ¶30]. Plaintiff filed the Complaint on January 3, 2018. [DE 1]. Accordingly, as the Miami Marathon had not yet occurred at the time of filing, Plaintiff could not have suffered any injury-in-fact with respect to a physical public place of accommodation.

To the extent Plaintiff responds by arguing that the *virtual barriers* with the website are somehow the cause of Plaintiff's inability to attend, such an argument would fail. The Complaint [DE 1] merely contends, by way of conclusion only, that the Website itself is a public accommodation. More specifically, that his "inability to enjoy" the Website's "amenities,

---

[17] His contention of being a "customer" is – in addition to being inherently vague and ambiguous – entirely conclusory and without any supporting factual allegations and underscores Complaint's [DE 1] genuine absence of credibility and plausibility. *See generally*, [DE 1].

[18] *See, Rendon*, 294 F.3d at 1283; *Haynes v. Interbond Corp. of Am.*, 2017 U.S. Dist. LEXIS 171644 (S.D. Fla. Oct. 16, 2017) (pursuant to *Rendon* a website is not necessarily covered when unmoored from a physical place).

[19] The foregoing argument is solely *in arguendo* as the Miami Marathon is the only alleged "physical" location in this action. As stated above, *supra*, the Miami Marathon is not a place of public accommodation under the ADA.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 4686 SUNBEAM ROAD - JACKSONVILLE, FLORIDA 32257 - (904) 672-4000 (904) 672-4050 FAX

accommodations, goods and services" prior to the Miami Marathon implausibly "impaired, hindered or impeded" Plaintiff's attendance at the event. [DE 1 at ¶36].

When faced with similar allegations, Florida District Courts have held that a review of a website is insufficient to provide Plaintiff any actual notice of a physical or tangible barrier at the Miami Marathon. *Resnick v. Magical Cruise Co., Ltd.*, 148 F.Supp.2d 1298 (M.D. Fla. June 22, 2001). Just as the plaintiff in *Resnick*, "even if [Plaintiff] had alleged a concrete intention to [attend the Miami Marathon], [he] would still lack the requisite grounds for [an alleged belief that he] would suffer discrimination. *Id.* at 1303. Under these circumstances, the only possible theory for finding that Plaintiff has standing under the ADA is to accept that an unspecified *virtual barrier* to "learn about" unidentified "goods and services" etc… on a website is sufficient, in and of itself, to show injury-in-fact necessary to state a claim under the ADA. As demonstrated above, such a finding is unsupported by, and indeed, contrary to existing law in the Eleventh Circuit, *supra*.

To be certain, the remainder of the Complaint [DE 1] merely recasts the ADA's legal requirements and makes the threadbare and formulaic assertion that Plaintiff "continues to desire to patronize Defendant, but is unable to do so, as he is unable to effectively communicate with the Defendant in order to obtain access to the Miami Marathon and Half Marathon in order to participate in the goods and services offered at the Miami Marathon and Half Marathon race event." [DE 1 at ¶37]. Plaintiff <u>does not</u> allege any *facts* that his screen reader's purported difficulty with "accessing" portions of the website prevented him from attending the Miami Marathon. [DE 1 at 31-35]. Nor does the Complaint [DE 1] allege facts related to, or which may support, how Plaintiff's mere "information and belief" regarding the Website's alleged deficiencies may have plausibly prevented him or visiting the Miami Marathon. [DE 1 at ¶36-49].[20] Moreover, given the reality of having filed of this Complaint [DE 1] nearly a month before the Marathon was scheduled to occur, *supra*, he could not have possibly attempted to access/attend the event.

Plaintiff alleges standing purely on his "review" of the Website, which is insufficient on its own to establish any likelihood of previous or future harm – immediate or otherwise. *See e.g.*, *Resnick v. Magical Cruise Co.*, *Ltd*., 148 F.Supp.2d 1298, 1301-02 (M.D. Fla. June 22, 2001). When taking into account that Plaintiff's ADA claim stems solely from *virtual barriers* in

---

[20] To the extent Plaintiff, in opposition to this Motion, attempts to argue otherwise, any and all potential allegations as to this issue are merely a string of purely and solely conclusory holdings stemming from his ambiguous review(s) of the Website. [DE 1 at ¶36]. Consistent with *Iqbal/Twombly* standards for evaluating pleadings under a Rule 12(b)(6) motion, these conclusions need to be excluded from consideration, *supra*.

conjunction with the fact that he could not have possibility attempted to attend the Marathon when the Complaint [DE 1] was filed weeks before January 28, 2018, there was no case or controversy. So, considering that Plaintiff could not have possibly encountered a tangible barrier or been prevented from accessing the Miami Marathon – especially without even alleging the intent to *actually* attend the event, *supra* – Plaintiff lacked standing at the time the Complaint [DE 1] was filed. Moreover, considering that the Marathon is an annual event, it cannot be reasonably argued that there the Complaint [DE 1] gives rise to a real and immediate threat of future injury. Plaintiff lacks standing and Count I should be dismissed for want of subject matter jurisdiction. *Resnick*, 148 F.Supp.2d at 1301-02.

WHEREFORE, Defendant, Life Time Fitness, Inc., respectfully moves this Honorable Court to issue an Order granting this Motion to Dismiss [DE 1] the Complaint in its entirety, and with prejudice, together with any additional relief in Defendant's favor that the the Court deems appropriate and just.

DATED:  February 28, 2018.

Respectfully Submitted,

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant*
Cole, Scott & Kissane Building
4686 Sunbeam Road
Jacksonville, Florida 32257
Telephone (561) 383-9228
Facsimile (904) 672-4050
Primary e-mail: rachel.beige@csklegal.com
Secondary e-mail: todd.dobry@csklegal.com

By:   s/ Todd R. Dobry
      RACHEL K. BEIGE
      Florida Bar No.:  16366
      TODD R. DOBRY
      Florida Bar No.:  109081

Case No. 1:18-cv-20022-JEM

## <u>CERTIFICATE OF SERVICE</u>

We hereby certify that on this 28th day of February, 2018, we electronically filed the foregoing with the Clerk of Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   s/ Todd R. Dobry
      RACHEL K. BEIGE
      Florida Bar No.:  16366
      TODD R. DOBRY
      Florida Bar No.:  109081

<u>SERVICE LIST</u>
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, FL 33127
*VIA CM/ECF*

- 21 -
**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 4686 SUNBEAM ROAD - JACKSONVILLE, FLORIDA 32257 - (904) 672-4000 (904) 672-4050 FAX